John Walter McKinney v. Lizzie Tuttle, for use of L. M. Phillips, Appellant.

*Feigned issue—Ownership of defendant in execution—Question for jury.*

On the trial of a feigned issue to determine the ownership of certain lumber cut from the plaintiff's land, the question was for the jury when there was evidence which, if believed, would have justified it in finding a contract to exist between plaintiff and defendant in the execution, by which such defendant had obtained an interest in the lumber.

**536** McKINNEY *v.* TUTTLE.

Argued May 16, 1899. Appeal, No. 60, April T., 1899, by defendant, from judgment of C. P. Warren Co., March T., 1898, No. 38, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by BEEBER, J.

Feigned issue. Before LINDSEY, P. J.

It appears from the record that this was a feigned issue to try the title to certain personal property in which the plaintiff in an execution of a judgment against C. W. McKinney alleged that the latter had an undivided one-half interest.

At the trial the plaintiff submitted certain points; the third point and answer are as follows :

[There is no sufficient evidence in this cause to submit to the jury, of the conveyance of any interest in the timber in controversy, from said John Walter McKinney to said C. A. McKinney. *Answer :* This point is affirmed.] [3]

Defendant submitted the following point, which point and answer are as follows :

[4. If the jury believe the testimony of the defendants in this cause as to the declarations of the ownership of the timber in' question, made by John Walter McKinney and C. A. McKinney, and the contracts in regard to the timber in question, made by John Walter McKinney and C. A. McKinney, they may find that C. A. McKinney owned the undivided one-half interest in the property in question, and if they so find their verdict should be for the defendant. *Answer :* This is answered in the negative.] [6]

The court directed a verdict in favor of plaintiff. Defendant appealed.

*Errors assigned* among others were (3) affirming plaintiff's third point, reciting same. (6) Refusing defendant's fourth point, reciting same. (7) In directing the jury to render a verdict in favor of plaintiff.

*W. W. Wilbur*, of *Wilbur & Schnur*, for appellant.—If a claimant truly states his interest to the sheriff, the plaintiff may proceed to sell the property, subject to his rights : Meyers v. Prentzell, 33 Pa. 482.

He will not be permitted to set up a limited or restricted ownership. When absolute or exclusive property has been pleaded, it must be proved: Stewart & Co. v. Wilson, 42 Pa. 450.

In a sheriff's interpleader the claimant is properly the plaintiff and the burden of proving title to the goods is on him: Tremont Coal Co. v. Manly, 60 Pa. 384.

Hence we submit that the learned court erred in affirming the plaintiff's second point, that the burden was upon the defendant in the issue " to show a transfer from John Walter McKinney to C. A. McKinney, of an interest in the property in question." And our second assignment of error should be sustained.

What a party declares against his interest in a litigated matter is always evidence; it may serve to show, if it be not regarded as idle declaration, how he estimated his own cause of action, and the jury may give it such weight as they think it deserves, under all the circumstances of the case: Wolf v. Studebaker, 65 Pa. 459, 463 ; Orner v. Hollman, 4 Wharton, 45.

In this case the jury were not allowed to pass upon these acts and declarations, as the learned court instructed them this evidence was not sufficient to submit to them, upon which to base a finding in favor of the defendant, and directed them to find a verdict for the plaintiff.

*D. I. Ball*, with him *Allen & Sons*, for appellee.—Upon the subject of loose declarations of title, corroborative in their character, it was said by SARGENT, J., in Sanford v. DeCamp, 8 Watts, 542: " Now the remark of the judge below seems unexceptional, that loose declarations of this kind will not be relied on by the court, particularly where they have not induced another to purchase ; for there is nothing from which it can be ascertained whether the title alluded to was by deed, by article of agreement, by parol contract and payment of money and delivery of possession, by devise or descent, or whether it was a title under Webster or adverse to him. Something more specific is necessary to furnish that solid and satisfactory ground on which a court is to decide the rights of property."

OPINION BY BEEBER, J., July 28, 1899:

This was a feigned issue to try the title to certain personal property in which a plaintiff in an execution on a judgment

against C. W. McKinney alleged that the latter had an un-divided one-half interest. The property consisted of several piles of pine, oak and hemlock lumber manufactured from tim-ber cut from a certain tract of land. In the feigned issue the claimant was John Walter McKinney who became the plaintiff, and the defendant was the plaintiff in the execution against C. A. McKinney. The timber, from which the lumber levied upon was manufactured, was cut from a tract of land which at one time belonged to Arthur McKinney, who died leaving a will in which he provided as follows: "All the rest, residue and remainder of my estate real, personal and mixed, I give, devise and bequeath unto my son, John Walter McKinney, his heirs and assigns forever, with the injunction that he share and divide with his brothers and sisters, and Mabel, the child of my daughter Emma, as he in his judgment shall deem just and right." To show his title to the property levied upon the plain-tiff offered in evidence the will containing the above clause. It may be conceded for the purposes of this case that the will gave to the plaintiff a fee simple estate in the tract of land from which the timber was cut, and that it was prima facie evidence that plaintiff at one time owned the timber. It throws no light whatever on the question whether he had parted with any portion of his interest in it. The utmost effect of its in-troduction in evidence was to shift the burden of proof to the defendant.

The defendant then proved that one E. A. Baker made a written contract with the plaintiff and with C. W. McKinney, signed by all three of them, to take the logs and saw them into lumber (and this was confirmed by the counsel who wrote the agreement), that for the balance due Baker on account of this contract the joint note of the two McKinneys was given, and that, according to the best recollection of Baker, the note was paid by their joint check. Defendant further proved that plain-tiff told C. H. Kay that he and his brother, C. W. McKinney, were the owners of the timber cut from this tract, of which the lumber levied upon was a part, that C. A. Carlson made a con-tract with the plaintiff and C. W. McKinney to haul the logs from the tract, got part of his money from both of them and notes for the balance signed by both, that Thomas Halliday made a contract with C. W. McKinney to haul out the slab

wood from this operation and pile it up for them, and then went to the plaintiff and told him of the contract and asked him if it was satisfactory, to which the plaintiff replied that it was and that C. W. McKinney had as much interest in there as he had and any bargain that he, Halliday, made with him, C. W. McKinney, was all right, that G. A. Jackson, an insurance agent, was asked by the plaintiff to insure this lumber for the benefit of himself and his brother, C. W. McKinney, that J. W. Agrelius purchased lumber from this tract and plaintiff told him to credit both himself and his brother, C. W. McKinney, for it.

In the face of all this evidence the court instructed the jury, in answer to the third point of the plaintiff and the fourth point of the defendant, that there was not sufficient evidence to be submitted to it to show that C. W. McKinney had any interest in the lumber levied upon. In this we think the court below was in error. The evidence, the substance of which we have stated above, was, in our opinion, amply sufficient to carry the case to the jury. If believed it would justify it in finding that some kind of an agreement, arrangement or contract was made between plaintiff and C. W. McKinney, by which the latter was to have an interest in the timber, or the lumber cut from it. Especially is this so in view of the fact that there was no contradiction whatever of any of this evidence by the plaintiff. All the testimony in the way of denial is found in the following quotations from the evidence. This is from the testimony of C. A. McKinney: " Q. Do you remember when the contract was made for the cutting of the timber? A. I do. Q. State to the court and the jury whether at the time the contract was made you owned any part of that timber. A. I did not. Q. Will you state if there was any conveyance from John Walter McKinney to yourself of any interest in the timber in question? A. There was not." And this from the testimony of the plaintiff himself : " Q. State whether or not there was any conveyance made by yourself to C. A. McKinney of any portion of this timber in question whatever. A. There was not, never." All this may have been literally true, and yet it does not tend to rebut the inference which the jury might draw from the acts of the two McKinneys, that there was some contract between the two, by which C. W. McKinney was to have an interest in

the lumber. Certainly no conveyance was absolutely necessary to transfer to C. W. McKinney an interest in this personal property levied upon, and the fact that he did not own any part of the timber, when the contract for its removal was made, does not rebut the inference which might be drawn from the defendant's evidence that there was a contract or an agreement of some kind by which he was to have an interest in the timber when it was cut into lumber. The third and sixth assignments of error are sustained. This renders unnecessary any discussion of the other assignments.

Judgment reversed and venire facias de novo awarded.